# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| David L. McKeehan and James A. Syracuse, individually, on behalf of the Cardinal Health Profit Sharing, Retirement and Savings Plan, and on behalf of a class of similarly situated individuals<br><br>Plaintiffs,<br><br>v.<br><br>Cardinal Health, Inc., the Plan Committee, Richard J. Miller, Susan Nelson and Putnam Fiduciary Trust Company,<br><br>Defendants. | Civil Action No. **C2.04    643**<br><br>**JUDGE SARGUS**<br><br>**MAGISTRATE JUDGE KING** |

## COMPLAINT AND JURY DEMAND

Plaintiffs, David L. McKeehan and James A. Syracuse("Plaintiffs"), on behalf of the Cardinal Health Profit Sharing, Retirement and Savings Plan (the "Plan") and its predecessors, and on behalf of a class of similarly situated participants in the Plan (the "Participants"), by their attorneys, alleges the following for their Complaint (the "Complaint"):

## I.    NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1.    Plaintiffs, Participants in the Plan, brings this action for Plan-wide relief on behalf of the Plan, and on behalf of a class of the Plan and all Participants in the Plan for whose individual accounts the Plan held shares of Cardinal Health, Inc. ("Cardinal" or "Company") common stock and/or a fund invested in Cardinal common stock (collectively,"stock" or "Fund")

between October 24, 2000 and June 30, 2004 (the "Class"). Excluded from the Class are Defendants, officers and directors of Cardinal and Putnam Fiduciary Trust Company ("Putnam"), members of their immediate families, and the heirs, successors or assigns of any of the foregoing. Plaintiffs bring this action on behalf of both the Plan and the Class pursuant to § 502(a)(2) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2)and (3).

     2.      As more fully set forth below, Defendants breached their fiduciary duties to the Plan and the Participants, including those fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and Department of Labor Regulations, 29 C.F.R. § 2550. As a result of these wrongful acts, pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), Defendants are personally liable to make good to the Plan the losses resulting from each such breach of fiduciary duty. Plaintiffs also seek equitable relief.

     3.      Plaintiffs allege that it was imprudent for the Plan to invest Plan assets in Cardinal stock because the price of shares of Cardinal stock was artificially inflated during the Class Period. Plaintiffs also allege that Defendants breached their fiduciary duties by negligently failing to disclose material information necessary for Participants to make informed decisions concerning Plan assets and benefits.

     4.      As a result of Defendants' breaches, the Plan suffered tremendous losses when the price of Cardinal stock fell dramatically.

## II.    **JURISDICTION AND VENUE**

     5.      Plaintiffs' claims arise under and pursuant to ERISA § 502, 29 USC § 1132.

     6.      This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

2

7.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this is the district where the Plan is administered, where the breaches took place and where one or more defendants reside or may be found.

## III.     THE PARTIES

### Plaintiff

8.     Plaintiff David L. McKeehan is a resident of the State of Illinois and was at all relevant times and is a Participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

9.     Plaintiff James A. Syracuse is a resident of the State of New York and was at all relevant times and is a Participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

### Defendants

10.     Defendant Cardinal is a corporation that maintains its principal office in Dublin, Ohio.

11.     The Plan Committee is, upon information and belief, a group of Cardinal employees.

12.     Upon information and belief, Defendant Richard J. Miller is an employee of Cardinal and a member of the Plan Committee.

13.     Upon information and belief, Defendant Susan Nelson is an employee of Cardinal and a member of the Plan Committee.

14.     Defendant Putnam is a trust company that maintains its principal office in Andover, Massachusettes.

3

## IV.    CLASS ACTION ALLEGATIONS

15.     Plaintiffs bring this action in part as a class action pursuant to Rules 23(a) and

(b)(1) and (3) of the Federal Rules of Civil Procedure on behalf of a class consisting of the Plan

and all Participants in the Plans for whose individual accounts the Plan held shares between

October 24, 2000 and June 30, 2004.  Excluded from the Class are Defendants, officers and

directors of Cardinal and Putnam, members of their immediate families, and the heirs, successors

or assigns of any of the foregoing.

16.     The members of the Class are so numerous that joinder of all members is

impracticable.  While the exact number of Class members is unknown at this time and can only

be ascertained through appropriate discovery, Plaintiffs believe there are, at a minimum,

thousands of members of the Class in that the Plan's Form 5500 represents that the Plan had over

33,000 Participants at one time during the Class Period, and that many or all of these were

Participants for whose accounts the Plan held Cardinal stock.

17.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions affecting solely individual members of the Class.  Among the

questions of law and fact common to the Class are:

      a.     whether Defendants were fiduciaries to the Plan and/or the Participants;

      b.     whether Defendants breached their fiduciary duties;

      c.     whether the Plan and the Participants were injured by such breaches; and

      d.     whether the Class is entitled to damages and injunctive relief.

4

18.     Plaintiffs' claims are typical of the claims of the members of the Class, as Plaintiffs and members of the Class sustained injury arising out of Defendants' wrongful conduct in breaching their fiduciary duties and violating ERISA as complained of herein.

19.     Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained competent counsel. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

20.     Prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

21.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

V.     **DESCRIPTION OF THE PLAN**

22.     The Plan is an employee benefit plan within the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

23.    The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each Participant and for benefits based solely upon the amount contributed to the account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participant's accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

24.    The Plan is a voluntary contribution plan whereby Participants made contributions to the Plan and directed the Plan to purchase investments with those contributions from among the investment options available in the Plan and allocate them to Participants' individual accounts. Cardinal stock and the Fund were investment options for Plan assets.

25.    The Plan provided that Cardinal would make discretionary matching and profit sharing contributions. Participants directed the Plan to purchase investments with those contributions from among the investment options available in the Plan and allocate them to Participants' individual accounts.

## VI.  DEFENDANTS WERE FIDUCIARIES

26.    As more fully alleged below, at all times relevant to this Complaint, Defendants were fiduciaries of the Plan because they were so named and/or because they exercised discretionary authority or control respecting management of the Plan or management or disposition of Plan assets or had discretionary authority or responsibility in the administration of the Plan. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). In that regard, a person is a fiduciary even if a plan does not name him as such or by its terms assign fiduciary duties to him where by

6

his conduct he engages in fiduciary activities. The test for whether a person is a fiduciary is functional and based on actual conduct. Those who have control over management of a plan or plan assets are fiduciaries regardless of the labels or duties assigned to them by the language of a plan. Moreover, in order to fulfill the express remedial purpose of ERISA, the definition of "fiduciary" is to be construed broadly.

27. A fiduciary may not avoid his fiduciary responsibilities under ERISA by relying solely on the language of the plan documents. While the basic structure of a plan may be specified within limits by the plan sponsor, the fiduciary may not follow the plan document if to do so leads to an imprudent result under ERISA § 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D).

28. According to the Plan, Cardinal was the Administrator of the Plan and had the "final authority for the administration of the Plan." Plan § 10.01. Therefore, it was a fiduciary within the meaning of ERISA § 3(16)(A), 29 U.S.C.§ 1002(16)(A) and 29 U.S.C. § 1102(a). Cardinal was also a fiduciary because it had the sole authority to appoint and remove the Trustee and members of the Committee. Cardinal was also a fiduciary because it had the authority to change investment options under the Plan and the rules governing investment designations. Plan § 8.05.

29. According to the Plan, the Plan Committee assisted Cardinal "in the administration of the Plan." Plan §1.06. The Committee, along with the Trustee, had the authority to establish investment options under the Plan. Plan § 8.05. The Committee, along with Cardinal, also had the authority to change investment options under the Plan and the rules governing investment designations. Plan § 8.05. Committee members were fiduciaries as a result of their positions on the Committee.

7

30.     Putnam was the Plan Trustee.  The Trustee, along with the Committee, had the authority to establish investment options under the Plan. Plan § 8.05. In particular, the Trustee was "authorized" but not required to maintain a Cardinal Stock Fund as an investment option. Plan § 8.05.

## VII.     FIDUCIARY DUTIES UNDER ERISA

31.     **The Statutory Requirements.  ERISA imposes strict fiduciary duties upon plan fiduciaries.  ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:**

> **[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.**

32.     **The Duty of Loyalty.  ERISA imposes on a plan fiduciary the duty of loyalty--that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ."**

33.     **The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.**

8

34.     **The Duty of Prudence.  Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence--that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."**

35.     **The Duty to Inform.  The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: 1) a negative duty not to misinform; 2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and 3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.  These duties to disclose and inform recognize the disparity that may exist, and in this case did exist, between the training and knowledge of the fiduciaries, on the one hand, and the Participants, on the other.**

36.     Pursuant to the duty to inform, fiduciaries of the Plan were required under ERISA to furnish certain information to Participants.  For example, ERISA § 101, 29 U.S.C. § 1021, requires that fiduciaries furnish a Summary Plan Description ("SPD") to Participants. ERISA § 102, 29 U.S.C.§ 1022, provides that the SPD must apprise Participants of their rights under the Plan.  The SPD and all information contained or incorporated therein constitutes a representation in a fiduciary capacity upon which Participants were entitled to rely in determining the identity and responsibilities of fiduciaries under the Plans and in making decisions concerning their benefits and investment and management of Plan assets allocated to their accounts:

9

The format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries. Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations. The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted.

29 C.F.R. § 2520.102-2(b).

37. **The Duty to Investigate and Monitor Investment Alternatives.** With respect to a pension plan such as the Plan, the duties of loyalty and prudence also entail a duty to conduct an independent investigation into, and continually to monitor, the merits of the investment alternatives in the Plan, including employer securities, to ensure that each investment is a suitable option for the Plan.

38. **The Duty to Monitor Appointed Fiduciaries.** Fiduciaries who have the responsibility for appointing other fiduciaries have the further duty to monitor the fiduciaries thus appointed. The duty to monitor entails both giving information to and reviewing the actions of the appointed fiduciaries. In a 401(k) plan such as the Plan, the monitoring fiduciaries must therefore ensure that the appointed fiduciaries:

- possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties;

- are knowledgeable about the operations of the Plan, the goals of the Plan, and the behavior of Plan participants;

- are provided with adequate financial resources to do their job;

- have adequate information to do their job of overseeing the Plan investments with respect to company stock;

- have access to outside, impartial advisors when needed;

- maintain adequate records of the information on which they base their decisions and analysis with respect to Plan investment options; and

- report regularly to the monitoring fiduciaries.

The monitoring fiduciaries must then review, understand, and approve the conduct of the hands-on fiduciaries.

39.     **The Duty Sometimes to Disregard Plan Documents.** A fiduciary may not avoid his fiduciary responsibilities by relying solely on the language of the plan documents. While the basic structure of a plan may be specified, within limits, by the plan sponsor, the fiduciary may not blindly follow the plan document if to do so leads to an imprudent result. ERISA § 404(a)(1)(d), (29 U.S.C. § 1104(a)(1)(D)).

40.     **Co-Fiduciary Liability.** A fiduciary is liable not only for fiduciary breaches within the sphere of his own responsibility, but also as a co-fiduciary in certain circumstances. ERISA § 405(a), 29 U.S.C. § 1105(a), states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2)     if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

**41.     Non-Fiduciary Liability.**  Under ERISA non-fiduciaries who knowingly participate in a fiduciary breach may themselves be liable for certain relief under ERISA § 502(a)(3), 29 U.S.C. § 1332(a)(3).

## VIII.     PARTICIPANTS ARE NOT RESPONSIBLE FOR IMPRUDENT PLAN INVESTMENTS

42.     The fact that Participants selected the investments in which the Plan invested Participant account balances is no defense in this case.  Fiduciaries can shift liability for imprudent investments to Participants under ERISA § 404(c), 29 U.S.C. § 1104(c) only if, among other things, they meet four specific requirements:

a)     they disclose in advance the intent to shift liability to Participants;

b)     they ensure that Participants are not subject to undue influence;

c)     they provide an adequate description of the investment objectives and risk and return characteristics of each investment option; and

d)     they disclose to Participants all material information necessary for Participants to make investment decisions that they are not precluded from disclosing under other applicable law.  In this regard, fiduciaries have a choice – they can disclose all material information to Participants, including information that they are not required to disclose under the securities laws, and shift liability to Participants, or they can comply with the more limited disclosure requirement under the securities laws but remain liable for imprudent investments. 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(i) and (ii) and (c)(2)(i) and (ii).

12

43.     As set forth in more detail below, Defendants failed to shift liability to Participants for imprudent investment decisions under section 404(c) because they failed to comply with the relevant Regulations.

IX.     **COUNT I: DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES BY DESIGNATING CARDINAL STOCK AS AN INVESTMENT OPTION AND PERMITTING THE PLAN TO INVEST IN THAT STOCK**

44.     Despite the fact that they should have known that the Fund and Cardinal stock were not prudent investments, Defendants breached their fiduciary duties by (a) offering Cardinal stock and the Fund as investment options for the Plan; (b) permitting the Plan to purchase shares of Cardinal stock and the Fund; (c) permitting the Plan to maintain its investment in Cardinal stock and the Fund; and (d) permitting the Plan to maintain its imprudent concentration in Cardinal stock and Fund shares.

45.     Cardinal stock and the Fund were imprudent investments because (a) Cardinal improperly accounted for amounts recovered from vitamin antitrust litigation; (b) Cardinal improperly classified as operating revenue or revenue from bulk deliveries revenue from other sources; (c) Cardinal improperly withheld and accounted for inventory; (d) Cardinal did not prepare its financial statements in accordance with GAAP; (e) Cardinal lacked proper internal accounting controls; and (f) the price of Cardinal stock was artificially inflated.

46.     Based on the foregoing, Defendants should have known that Cardinal stock and the Fund were not prudent investment options throughout the Class Period. As a result thereof, the Plan should have terminated the Fund and Cardinal stock as investment options,

halted the purchase of shares of the Fund and Cardinal stock and sold all of its shares in the Fund and Cardinal stock.

47.     To the extent that Defendants possessed material adverse nonpublic information, they should have prevented the Plan from purchasing additional shares in the Fund and Cardinal stock. They should also have directed the Plan to sell all of its shares in the Fund and Cardinal stock  and disclosed this nonpublic information prior to any sales by the Plan.  Had they done so, the Plan would have limited its losses substantially, even though the price might have dropped somewhat upon disclosure.

48.     As a consequence of the Defendants' breaches, the Plan suffered losses.

49.     The Defendants are liable to personally make good to the Plans any losses to the Plans resulting from each breach under 29 U.S.C. § 502(a)(2).

50.     Each Defendant is liable for the acts of the other Defendants as a co-fiduciary.  Upon information and belief, each Defendant (a) knowingly participated in, or knowingly undertook to conceal the breaches of the other fiduciaries, (b) by virtue of his own breach of fiduciary duty, enabled the other defendants to breach their fiduciary duties, and/or (c) had knowledge of the other defendants' breaches and failed to take reasonable steps to remedy them.

51.     Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), the Court should award equitable relief to the Class.

## X.     COUNT II: DEFENDANTS FAILED TO DISCLOSE MATERIAL INFORMATION

14

52. Defendants failed to disclose complete and accurate information in a fiduciary capacity in Cardinal's Form S-8 Registration Statement ("S-8") and, upon information and belief, the SPD. These documents were intended to communicate to Participants information necessary for Participants to manage their retirement benefits under the Plan. The S-8 and, upon information and belief, the SPD, incorporated by reference all of Cardinal's past and future SEC filings. Consequently, the SEC filings were part of the S-8 and the SPD. Defendants exercised discretion in determining the information contained in the SEC filings and to be incorporated into the S-8 and the SPD, and in disseminating the S-8 and the SPD to Participants.

53. The SEC filings which were incorporated into the S-8 and, upon information and belief, the SPD, negligently failed to disclose Cardinal's financial results. In particular, Cardinal's Forms 10-k for the periods ending 2001, 2002 and 2003, and quarterly Forms 10-Q for the periods ending from September 30, 2000 to March 31, 2004, negligently failed to disclose Cardinal's actual revenue and earnings and actual revenue and earnings growth and that Cardinal's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

54. In particular, the forgoing SEC filings were false and misleading in that they failed to disclose that (a) Cardinal improperly accounted for amounts recovered from vitamin antitrust litigation; (b) Cardinal improperly classified as operating revenue or revenue from bulk deliveries revenue from other sources; (c) Cardinal improperly withheld and accounted for inventory; (d) Cardinal did not prepare its financial statements in accordance with GAAP; (e) Cardinal lacked proper internal accounting controls; and (f) the price of Cardinal stock was artificially inflated.

15

55.     Defendants breached their fiduciary duties by failing to provide to Participants complete, accurate and material information necessary for Participants to make decisions concerning the prudence of directing the Plan to invest in the Cardinal stock and the Fund.

56.     As a consequence of the foregoing negligent nondisclosures, Defendants also breached their fiduciary duties in that they failed to provide Participants with an adequate description of the risk and return characteristics of Cardinal stock and the Fund.

57.     As a consequence of the Defendants' breaches, the Plan suffered losses.

58.     The Defendants are liable to personally make good to the Plan any losses to the Plan resulting from each breach under 29 U.S.C. § 502(a)(2).

59.     Each Defendant is liable for the acts of the other Defendants as a co-fiduciary.  Upon information and belief, each defendant (a) knowingly participated in, or knowingly undertook to conceal the breaches of the other fiduciaries, (b) by virtue of his own breach of fiduciary duty, enabled the other defendants to breach their fiduciary duties, and/or (c) had knowledge of the other defendants' breaches and failed to take reasonable steps to remedy them.

60.     Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), the Court should award equitable relief to the Class.

## PRAYER FOR RELIEF AND JURY TRIAL DEMAND

WHEREFORE, Plaintiffs pray for:

A.     A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

16

B.     A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C.     An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations;

D.     Imposition a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.     An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F.     Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses;

G.     An Order that Defendants allocate the Plan's recoveries to the accounts of all Participants who had any portion of their account balances invested in the Fund or the common stock of Cardinal maintained by the Plan in proportion to the accounts' losses attributable to the decline in the stock price of Cardinal;

H.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I.     An order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine;

J.     An Order for equitable restitution and other appropriate equitable monetary relief against the Defendants; and

17

K.       Plaintiffs demand trial by jury.

DATED: July 19, 2004

                          Respectfully submitted,

                          **CLARK, PERDUE, ROBERTS & SCOTT CO., L.P.A.**

                          James E. Arnold, Esq. (0037712)
                          471 East Broad Street, Suite 1400
                          Columbus, OH  43215
                          Telephone:     (614) 469-1400
                          Facsimile:     (614) 469-1066
                          Email:            jarnold@cprslaw.com

                          **SCHATZ & NOBEL, P.C.**

                          Robert A. Izard
                          Andrew M. Schatz
                          20 Church Street, Suite 1700
                          Hartford, CT 06103
                          Telephone:     (860) 493-6292
                          Facsimile:     (860) 493-6290

                          **Attorneys for Plaintiffs**